In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3286

KENNETH NEIMAN,

Plaintiff-Appellant,

v.

THOMAS M. KEANE,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 98 C 3209--Charles P. Kocoras, Judge.

Argued August 9, 2000--Decided November 13, 2000

Before POSNER, RIPPLE and WILLIAMS, Circuit
Judges.

RIPPLE, Circuit Judge.  After several
businesses reported that Kenneth Neiman
had refused to pay for part or all of
work performed on his home, Detective
Thomas Keane of the Deerfield, Illinois
Police Department arrested Mr. Neiman.
The detective made the arrest pursuant to
a warrant, procured by him, alleging that
Mr. Neiman had committed the offense of
theft of services. After several court
appearances, the Lake County State's
Attorney voluntarily dismissed the
charges against Mr. Neiman. Mr. Neiman
then filed this action under 42 U.S.C.
sec. 1983; he alleged that Detective
Keane violated the Fourth Amendment by
applying for the warrant in the absence
of probable cause. The district court
granted summary judgment for Detective
Keane. We affirm the judgment of the
district court.

I
BACKGROUND

In December 1996, Mr. Neiman hired Bishop Heating Company to repair the furnace in a home that he had purchased on Overland Drive in Deerfield. According to Mr. Neiman, a Bishop Heating employee inspected the furnace and told him that it merely needed to be cleaned, a service that would cost approximately $105. After he was quoted the price, Mr. Neiman left the repairman in the house to work on the furnace. When Mr. Neiman returned, he found a bill totaling almost $400. Mr. Neiman refused to pay the bill because he believed the Bishop Heatingemployee had performed unauthorized services.

Subsequently, a Bishop Heating representative called Detective Keane at the Deerfield Police Department and complained that, although Bishop Heating had repaired Mr. Neiman's furnace, Mr. Neiman had refused to pay the bill. Mr. Neiman avers that Detective Keane then called him and threatened to arrest him if he did not pay the disputed bill. Detective Keane, on the other hand, insists that he called Mr. Neiman to inquire about the unpaid bill and that Mr. Neiman told him the bill was disputed but nevertheless agreed to pay it. Detective Keane admits, however, that he told Mr. Neiman that he might initiate charges against him if the bill was not paid. Both parties agree that Mr. Neiman tendered a cashier's check for the full amount of the bill to Detective Keane. The detective delivered it to Bishop Heating.

In July of 1997, Mr. Neiman complained to the Deerfield Police Department that someone had entered the Overland Drive home, which was empty at the time, and had stolen some repair tools. Detective Keane, who was assigned to investigate the burglary, asked Mr. Neiman for a list of possible suspects. Mr. Neiman named several businesses that at various times had performed work on the burglarized home, including Pasquesi Plumbing ("Pasquesi"), A-American Contractors and Supplies ("A-American"), E & B Landscaping Co. ("E & B") and Woody's Tree Service ("Woody's"). During Detective Keane's investigation of the burglary, these four businesses complained that they had performed services for Mr. Neiman, but that Mr.

Neiman later refused to pay for some or all of the work. Detective Keane questioned Mr. Neiman about these allegations of non-payment; Mr. Neiman responded that he had not paid the companies because they either had failed to complete the work he had requested or had not performed it properly.

Detective Keane avers that, as a result of his investigation, he believed that Mr. Neiman had engaged in a pattern of deception by which Mr. Neiman hired businesses to perform work on the Overland Drive house and then fabricated reasons to evade payment. The detective thus sought approval from Lake County Assistant State's Attorney Donald Morrison ("ASA Morrison") to file charges against Mr. Neiman for theft of services by deception. At first, ASA Morrison voiced skepticism regarding whether there was sufficient evidence to prove that Mr. Neiman intended not to pay E & B and Woody's, the two businesses that were receptive to prosecuting Mr. Neiman. After Detective Keane informed him of the other businesses' reports of non-payment, however, ASA Morrison concluded that evidence of these other alleged non-payments exhibited a pattern of conduct that would be admissible to demonstrate the requisite intent to obtain services fraudulently. ASA Morrison then signed an information charging Mr. Neiman with theft of services from E & B and Woody's. The information was then presented to a judge, who issued a warrant for Mr. Neiman's arrest. Eventually, however, ASA Morrison voluntarily dropped the charges against Mr. Neiman.

After the charges against him were dismissed, Mr. Neiman filed this suit alleging that Detective Keane "acting willfully, maliciously, and without probable cause . . . caused two criminal charges to be instituted against [Mr. Neiman]." R.1 at 2. Detective Keane moved for summary judgment; he argued that the arrest was made pursuant to a valid warrant, and, in the alternative, that probable cause supported the arrest. The district court granted Detective Keane's motion. It concluded that Mr. Neiman had presented no evidence that the detective misled the prosecutor or the judge. Because it found that the arrest was made pursuant to a valid warrant, the court did not address whether there was

probable cause for the arrest. Mr. Neiman then timely filed this appeal.

II
DISCUSSION

The parties do not disagree on the governing legal principles. A plaintiff cannot base a valid Fourth Amendment claim on an arrest made under a valid warrant. See Baker v. McCollan, 443 U.S. 137, 143-44 (1979). The officer procuring the warrant, however, enjoys not absolute but qualified immunity with respect to his actions in the application of the warrant. See Malley v. Briggs, 475 U.S. 335, 344 (1986). In Malley, the Supreme Court made clear that an officer procuring a warrant is held to the same standard of objective reasonableness that applies in the context of a suppression hearing./1 Accordingly, the officer procuring the warrant is immune from a suit for damages unless it can be shown that the "warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Malley, 475 U.S. at 344-45. We therefore have held that an officer is not immune from suit for procuring a warrant "if a reasonably well-trained officer in the position of the defendant would have known that the action lacks probable cause and that he should not have applied for the warrant." Simmons v. Pryor, 26 F.3d 650, 653 (7th Cir. 1993); see also Juriss v. McGowan, 957 F.2d 345, 350-51 (7th Cir. 1992). This situation, we pointed out, occurs when the officer procuring the warrant does not inform the judicial officer of facts that would negate probable cause or when the officer recklessly disregards the truth in his representations to the judicial officer. See Olson v. Tyler, 825 F.2d 1116, 1121 (7th Cir. 1987)./2

Mr. Neiman claims that the detective acted improperly in three ways. First, Mr. Neiman alleges that the detective misled ASA Morrison by not disclosing his prior involvement in Mr. Neiman's disputed debt with Bishop Heating. Second, the detective purportedly did not conduct a reasonable investigation regarding whether the work for which Mr. Neiman refused payment was actually completed. Lastly, the detective

allegedly failed to ask Mr. Neiman for his side of the story before arresting him.

In our view, Mr. Neiman failed to produce evidence that Detective Keane had misled the prosecutor in obtaining the warrant. When discussing the possibility of filing charges against Mr. Neiman, Detective Keane informed ASA Morrison about the disputes regarding payment for services that Mr. Neiman had with five businesses, including Bishop Heating. There is no evidence in the record that the detective lied or withheld information about the nature of the disputes. Mr. Neiman's denial of the allegations of the contractors does not, standing alone, "negate probable cause." Olson, 825 F.2d at 1121. Rather, as evidenced by ASA Morrison's deposition testimony, Detective Keane relayed information on each incident to ASA Morrison, and ASA Morrison determined there was a pattern of Mr. Neiman disputing his bills and then not paying all or part of them. Although Detective Keane had only circumstantial evidence of criminal motive, we have noted that police officers "have a hard time evaluating competing claims about motive; they are entitled to act on the basis of observable events and let courts resolve conflicts about mental states." Hebron v. Touhy, 18 F.3d 421, 423 (7th Cir. 1994).

Furthermore, the record shows that Detective Keane did have probable cause to arrest Mr. Neiman even absent a valid arrest warrant./3 Probable cause exists at the time of arrest when reasonably trustworthy information, facts and circumstances would lead a prudent person to believe that a suspect had committed or was committing a crime. See Speigel v. Cortese, 196 F.3d 717, 723 (7th Cir. 1999), cert. denied, 120 S. Ct. 2688 (2000). Generally, whether there is probable cause is a jury question, but "when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," a court may decide the issue. Booker v. Ward, 94 F.3d 1052, 1058 (7th Cir. 1996) (citation and internal quotations omitted).

In this case, the record clearly shows that the detective investigated and relied on sufficient information to establish a reasonable belief that Mr. Neiman had committed theft of services by deception. Five different businesses informed Detective Keane that Mr. Neiman had not paid for all or part of the work that they had performed on the Overland Drive home. The businesses explained to the detective that they had completed all of the work for which they were hired, which conflicts with Mr. Neiman's claim that the contractors had not done all of the work or had done the work improperly. Complaints from putative victims about alleged crimes generally establish probable cause unless the complaint "would lead a reasonable officer to be suspicious." Hebron, 18 F.3d at 422-23. If a reasonable officer should be suspicious that the putative victims' complaints are not reliable, then the officer is obliged to conduct a further examination of the complaint. See id. at 423. That is not the situation in this case. Here the detective received five independent reports from contractors alleging that Mr. Neiman had not paid for services. Detective Keane had reason to believe that the complaints from the putative victims were truthful because all five businesses complained of the same behavior by Mr. Neiman. Thus, Detective Keane did not have an additional duty to inspect Mr. Neiman's premises to see if the work had actually been performed to Mr. Neiman's specifications. See, e.g., Kelley v. Myler, 149 F.3d 641, 647 (7th Cir. 1998) (holding that because third-party complainant's information was reliable, police officers had no duty to investigate whether arrestee was on private property before arresting her for trespass). Notwithstanding the fact that the detective was not required to conduct a further investigation, the record shows that Detective Keane did conduct an additional investigation into the alleged crime by interviewing Mr. Neiman about the allegations against him. That Mr. Neiman provided a reason for not paying the businesses does not negate the existence of probable cause to arrest him. See Hebron, 18 F.3d at 423.

Conclusion

Accordingly, we affirm the grant of summary judgment to Detective Keane.

AFFIRMED

/1 Cf. United States v. Leon, 468 U.S. 897, 922 (1984) (holding, in the context of a suppression motion, that the officer's reliance on the magistrate's probable-cause determination must be objectively reasonable).

/2 We cannot accept Mr. Neiman's characterization of the district court's opinion as misapprehending these principles. In any event, in light of our de novo review of the record, any misapprehension is of no consequence to the outcome of this appeal. See, e.g., Malacara v. City of Madison, 224 F.3d 727, 729 (7th Cir. 2000).

/3 The district court did not address the probable cause question, but this court may affirm the district court's grant of summary judgment on any ground supported by the record. See Long v. Shorebank Dev. Corp., 182 F.3d 548, 560 (7th Cir. 1999).